UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DHR INTERNATIONAL INC.,

    Plaintiff,

    v.

ADAM D. CHARLSON,

    Defendant.

_____/

No. C 14-1899 PJH

**ORDER RE MOTIONS TO DISMISS AND MOTIONS TO DISQUALIFY COUNSEL**

Defendant's motion to dismiss the sixth cause of action for failure to state a claim, motion to dismiss the complaint for lack of subject matter jurisdiction, and motion to disqualify plaintiff's counsel came on for hearing before this court on September 17, 2014. Plaintiff appeared by its counsel James Berdelle and Michael Israel, and defendant appeared by his counsel Christopher LeClerc and Michele Gustafson.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion to dismiss the sixth cause of action and DENIES the motion to dismiss for lack of subject matter jurisdiction and the motion to disqualify counsel, as follows and for the reasons stated at the hearing.

**BACKGROUND**

Plaintiff DHR International, Inc. ("DHR") is an executive search firm based in Chicago.  Defendant Adam D. Charlson ("Charlson"), who lives in Danville, California, was hired by DHR to become an executive search consultant, and the President and Managing Director of DHR's West Coast operations, effective May 14, 2012.  Charlson and DHR

entered into an Employment Agreement, which provided that employment was to be "at will," and that the Agreement was to be interpreted under and governed by the laws of Illinois.

The Agreement included provisions relating to payment of compensation, and also relating to benefits, unpaid vacation/personal time, and withholding.  With regard to compensation, the Agreement provided that Charlson would receive (a) a recoverable draw of $20,833.33 payable on the 10th of each month; (b) a one-time bonus of $250,000 if $550,000 in search fees was collected within the first six months of employment, and a one-time bonus of $250,000 if $550,000 in search fees was collected within the second six months of employment; (c) 10% of the firm's cash-based profits in California and Washington State; and (d) a potential bonus on fees collected by DHR from his accounts. He would also receive a recoverable marketing budget and a business development fund.

The Agreement further provided that all bonuses were to be calculated on a calendar-year basis, and paid on an annual basis, and that bonuses were not payable until the fees upon which the bonuses were based were received by DHR.  In addition, the two $250,000 bonuses were "subject to a claw back of $105,000 each should you depart [DHR] within one year of payment."

On June 10, 2013, DHR paid Charlson approximately $500,000 to reflect the two bonuses of $250,000 each that Charlson was to receive if $550,000 in search fees was collected during the first six months and during the second six months of employment at DHR.

DHR alleges that starting as early as November 2013, Charlson began to disrupt and sabotage DHR's West Coast operations, while at the same time seeking to set up competition against DHR's West Coast operations and encouraging other DHR employees to leave DHR.  DHR also cites to various statements made by Charlson about DHR during the month of March 2014.  DHR terminated Charlson on April 6, 2014, claiming that he had disclosed confidential company information and had attempted to solicit or induce other DHR personnel to terminate their relationships with DHR.

On April 7, 2014, DHR demanded that Charlson make payment in the amount of $211,000 pursuant to the "clawback" provision of the Employment Agreement, and based on DHR's having paid Charlson approximately $500,000 in bonuses on June 10, 2013. Charlson refused.

DHR filed the present action on April 24, 2014, asserting six causes of action – breach of the duty of loyalty; breach of fiduciary duty; fraudulent concealment; unfair business practices in violation of California Business & Professions Code § 17200; declaratory judgment; and breach of contract. The sixth cause of action for breach of contract alleges that by refusing to return the $211,000, Charlson failed to comply with the clawback provision in the Employment Agreement.

Charlson now seeks an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing the breach of contract claim for failure to state a claim, arguing that the clawback provision is unenforceable under California law. He also seeks an order dismissing the remaining causes of action for lack of subject matter jurisdiction, on the theory that without the breach of contract claim, there will no longer be an amount in controversy sufficient to meet the minimum required for diversity jurisdiction. Finally, he seeks an order disqualifying DHR's counsel James Berdelle, on the ground that Mr. Berdelle is likely to be called as a witness at trial.

**DISCUSSION**

A.  Motion to Dismiss Sixth Cause of Action

    1.  Legal standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader

3

is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); see also In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008).

The allegations in the complaint "must be enough to raise a right to relief above the speculative level[,]" and a motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679. In the event dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

Although the court generally may not consider material outside the pleadings when resolving a motion to dismiss for failure to state a claim, the court may consider matters that are properly the subject of judicial notice. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001); Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986). Additionally, the court may consider exhibits attached to the complaint, see Hal Roach Studios, Inc. V. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), as well as documents referenced extensively in the complaint and documents that form the basis of a the plaintiff's claims. See No. 84 Employer-Teamster Jt. Counsel

4

Pension Tr. Fund v. America West Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

      2.        Defendant's motion

In the sixth cause of action, DHR alleges that Charlson "breached his contractual duties to DHR by refusing to pay DHR the monies it is owed under the Employment Agreement's 'claw back' provision." Cplt ¶ 68. Charlson argues that the sixth cause of action fails to state a claim because the clawback provision is unenforceable under the California Labor Code.

Charlson argues that the monies that DHR seeks to claw back constitute wages that were fully earned at the time DHR paid him the approximately $500,000 in one-time bonuses on June 10, 2013. He notes that the Employment Agreement itself expressly defines the bonuses as "compensation," and that the only condition precedent attached to earning the one-time bonuses was that $550,000 in search fees be collected before each $250,000 bonus was paid. Any shortfall of those amounts would be paid in accordance with the company's standard bonus formula as set forth in the Employment Agreement – i.e., per the standard commission for that period in lieu of the one-time bonuses.

Charlson asserts that because DHR concedes that it paid him the amount of $500,000 for the two bonuses, and because DHR was not required under the Agreement to pay the one-time bonuses until after it had collected the search fees, the compensation represented by the one-time bonuses was clearly wages that had been fully earned by Charlson, and as such, were not subject to being clawed back.

In opposition, DHR argues that pursuant to the choice-of-law provision in the Employment Agreement, the court should apply Illinois law, which it claims allows for the clawback of the $211,000. DHR contends that California law favors the application of the choice-of-law rules – specifically, Restatement (Second) of Conflict of Laws § 187 – and that under those rules, the court should apply Illinois law.

DHR argues that the State of Illinois has a substantial relationship to the parties; that the parties' agreed choice of Illinois law is not contrary to a fundamental policy of California, and that in any event, the clawback provision does not violate the California

5

Labor Code; and that Illinois has a materially greater interest in this matter than does California.

The court finds that the motion must be GRANTED. Before deciding whether California law bars the contractual provision allowing DHR to seek a clawback of the one-time bonuses in the event that Charlson did not remain employed at DHR for one year, the court must determine whether Illinois law or California law applies to this dispute.

Federal courts sitting in diversity look to the law of the forum state when making choice-of-law determinations. Hoffman v. Citibank (S.D.), N.A., 546 F.3d 1078, 1082 (9th Cir. 2008) (per curiam). The court sits in diversity in this case. Under California law, when an agreement contains a choice-of-law provision, the parties' choice governs unless § 187(2) of the Restatement (Second) of Conflict of Laws dictates a different result. Id.

Under Restatement § 187(2), the court must first determine as a threshold matter (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, the court need not enforce the parties' choice of law. Nedlloyd Lines B.V. v. Superior Court, 3 Cal. 4th 459, 465-66 (1992).

If, however, either test is met, the court must determine whether the chosen state's law is contrary to a fundamental policy of California. If there is no such conflict, the court must enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must determine whether California has a "materially greater interest than the chosen state in the determination of the particular issue." If California has a materially greater interest than the chosen state, the choice of law will not be enforced and California law will apply. See id.

Illinois undoubtedly has a substantial relationship to DHR, as its main office is located there, and executives from DHR's Chicago office were involved in negotiating the Employment Agreement with Charlson. However, Illinois' relationship to Charlson is not so substantial. It is true that Charlson was employed by DHR and that he allegedly negotiated the Employment Agreement with executives based in Illinois. However, he actually entered

into the Agreement in California.  Moreover, he was hired to head up DHR's West Coast operation, which is based in California.  In addition, notwithstanding the choice-of-law provision in the contract, DHR's complaint references California law and even includes a cause of action seeking a declaratory judgment under California law.  Thus, it is clear that DHR contemplates California law as governing at least a portion of this dispute.  Nevertheless, assuming for the sake of argument that Illinois does have a substantial relationship to both parties, the court must consider whether Illinois law is contrary to a fundamental policy of California.

California has a strong public policy in applying and enforcing its employment laws. See, e.g., Smith v. Superior Court, 39 Cal. 4th 77, 82 (2006).  For example, California Labor Code § 201 (immediate payment of wages upon discharge or layoff) and § 203 (failure to make payment within required time) encompass this fundamental policy.  Id.; Smith v. Rae-Venter Law Group, 29 Cal. 4th 345, 360 (2002); see also Hammrel v. Acer Europe, S.A., 2009 WL 30130, at *5 (N.D. Cal. Jan. 5, 2009) (noting "California's important 'interest in protecting employees of its state, and enforcing [its] wage laws,' . . . ") (citation omitted).  Further, California has a strong public policy against enforcing choice-of-law provisions that would abrogate the plaintiffs' rights to pursue remedies.  See Van Slyke v. Capital One Bank, 503 F.Supp. 2d 1353, 1361 (N.D. Cal. 2007).

The Labor Code defines "wages" to include "all amounts for labor performed by employees . . . whether the amount is fixed or ascertained by the standard of time, task, piece, commission, basis, or other method of calculation."  Cal. Lab. Code § 200.  "An employer who fails to pay an employee his or her wages, or engages in unlawful wage deductions, violates public policy."  Sciborski v. Pacific Bell Directory, 205 Cal. App. 4th 1152, 1174 (2012); see also Henry M. Lee Law Corp. v. Superior Court, 204 Cal. App. 4th 1375, 1388 (2012); Pineda v. Bank of America, N.A., 50 Cal. 4th 1389, 1400 (2010).

Labor Code § 221 "prohibits an employer from deducting amounts from an employee's wages, even as a set-off for amounts clearly owed by the employee. . . . This prohibition reflects 'California's strong public policy favoring the protection of employees'

wages,' including amounts earned through commissions on sales. . . ." Sciborski, 205 Cal. App. 4th at 1166. The rights protected by § 221 are nonnegotiable and cannot be waived by the parties. Id.

DHR's argument that the California Labor Code's prohibition against engaging in unlawful wage deductions does not embody a fundamental public policy is incorrect. DHR seems to be attempting to argue that because the "clawback" provision was made part of the Employment Agreement, which Charlson signed, he cannot now argue that he is not required to return a portion of his earned bonus. But the Agreement did not make continued employment a condition of Charlson's entitlement to compensation. Rather, it provided that if he did not remain employed for one year after receiving the "one-time" bonus compensation, he would be required to return part of his earned compensation (apparently as a sort of penalty).

The second part of the "public policy" inquiry is whether the interests of the forum state are materially greater than the interests of the chosen state. DHR contends that Illinois' interest in ensuring that its corporations are abiding by regulations specifically addressing the payment of bonuses upon termination of an employee is significantly greater than California's interest in whether portions of an employee's bonus are "wages" for purposes of the Labor Code, and whether a clawback of less than half of a $500,000 payment represents an attempt to avoid minimum wage laws.

To determine whether California has a materially greater interest than Illinois, the court analyzes the following factors: "(1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and, (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties." Ruiz v. Affinity Logistics Corp., 667 F.3d 1318, 1324 (9th Cir. 2012) (citing 1-800-Got Junk? LLC v. Superior Court, 189 Cal. App. 4th 500, 513 n.10 (2010) (citing Restatement § 188)).

In this case, (1) the contract was executed by Charlson in California, (2) the contract was negotiated with executives in Illinois, (3) the place of performance of the contract was

California, where plaintiff was based and where DHR's West Coast office was based, (4) the subject matter of the contract was Charlson's employment in California, and (5) the place of incorporation of DHR is Delaware, and its principal place of business is Illinois, and the domicile/residence of plaintiff is California. Although DHR is an Illinois company, on balance, Illinois' interests are not materially greater than the interests of California.

The final part of the analysis is whether California's interests would be more seriously impaired by the enforcement of the choice-of-law provision than would the interests of Illinois. Because Charlson is a resident of California who was employed in California, California has a greater interest in protecting his rights than Illinois does in enforcing the choice-of-law provision against him. If out-of-state companies could evade California law with respect to their employees who are working in California by simply having them sign an employment agreement that contains a choice-of-law clause designating the law of the company's home state as the law controlling the employment relationship, that would seriously weaken the effectiveness of California law. It would also mean that some California workers would have less workplace protection than others.

Accordingly, the court finds that California law must be applied to determine whether the "one-time" bonuses paid to Charlson should be considered earned compensation, or whether they should be considered an "advance" that could only be "earned" once certain conditions precedent were fulfilled.

The California Supreme Court construes "wages" broadly, to "include not only the periodic monetary earnings of the employee but also the other benefits to which he is entitled as a part of his compensation." Schachter v. Citigroup, Inc., 47 Cal. 4th 610, 618 (2009) (quotation and citation omitted). "Wages" also include "those benefits to which an employee is entitled as a part of his or her compensation, including money, room, board, clothing, vacation pay, and sick pay." Id. (quotation and citations omitted). Similarly, incentives such as bonuses and profit-sharing plans also constitute wages, as do sales commissions. Id.

The court finds that under the provisions of the Employment Agreement, the

one-time bonuses were fully earned wages, not advances. The Employment Agreement sets forth the requirement for earning the promised bonuses. The only condition precedent for the earning of each of the $250,000 one-time bonuses was that DHR have first collected $550,000 in search fees during the relevant six-month period.

Unlike the situation in the cases cited by DHR – e.g., City of Oakland v. Hassey, 163 Cal. App. 4th 1477 (2008); Koehl v. Verio, Inc., 142 Cal. App. 4th 1313 (2006); Steinhebel v. Los Angeles Times Commc'ns, 126 Cal. App. 4th 696 (2005); Lucian v. All States Trucking Co., 116 Cal. App. 3d 972 (1981) – where the commissions, bonuses, or incentives at issue had not been fully earned, the one-time bonuses at issue in this case had been fully earned at the time they were paid, according to the provision in the Employment Agreement.

The bonuses were paid as part of Charlson's "compensation," after the search fees were collected. Had the full amount of the search fees not been collected, Charlson would have been compensated under DHR's regular commission schedule. The requirement that he remain employed for one year afterwards was not a condition for earning the bonuses, as the bonuses had already been earned. Moreover, because his remaining employed for one year was not something that was entirely within his control, it cannot be viewed as a condition he was required to fulfill in order to retain the bonuses.

Under California law, the essence of an "advance" is that at the time of payment, the employer cannot determine what commission will eventually be earned because a condition to the employee's right to the commission has yet to occur, or its occurrence is otherwise unascertainable. See Sciborski, 205 Cal. App. 4th at 1167-68; see also Steinhebel, 126 Cal. App. 4th at 705. While an employer may expressly condition an earned sales commission on the sale becoming final (e.g., no returns within a specified period of time, or final payment received), the employer "may not require an employee to agree to a wage deduction in the guise of recouping an advance based on conditions that are unrelated to the sale and/or that merely reflect the employer's attempt to shift the cost of doing business to an employee." Sciborski, 205 Cal. App. 4th at 1168.

10

It is true that payment of incentive compensation may be contingent upon the happening of a future event, such as continued employment. Schacter, 47 Cal. 4th at 617.

> Only when an employee satisfies the condition precedent to receiving incentive compensation, which often includes remaining employed for a particular period of time, can that employee be said to have earned the incentive compensation (thereby necessitating payment upon resignation or termination). An employee who voluntarily leaves his employment before the bonus calculation date is not entitled to receive it.

Id. at 621-22 (citation and quotations omitted). Here, however, Charlson did not voluntarily leave his employment before he satisfied the condition precedent for earning the one-time bonuses – the payment of $550,000 in search fees for each of the six-month periods.

In Schacter, by contrast, the employer was a financial brokerage that offered a voluntary incentive compensation plan that provided employees with shares of restricted company stock at a reduced price in lieu of a portion of that employee's annual cash compensation. The restricted stock could not be sold, transferred, pledged, or assigned for a two-year period commencing on the date of the award. The employees also agreed that if they resigned or were terminated for cause before their restricted shares of stock vested (the two-year period), they would forfeit the stock and the portion of cash compensation they had directed to be paid towards the purchase of the restricted stock. (If they were involuntarily terminated without cause, they would still forfeit the stock but would receive a cash payment equal to the portion of compensation paid for the restricted stock).

The plaintiff voluntarily terminated his employment prior to the vesting of his restricted stock, and so under the plan, forfeited all his shares of stock and the percentage of his annual compensation he had designated to be paid to him in the form of restricted stock. He sued to recoup the cash compensation, arguing that the forfeiture provision violated the Labor Code, specifically §§ 201, 202, and 221. The California Supreme Court held that it did not, because no unearned, unpaid wages remained outstanding upon termination according to the terms of the incentive plan. Id., 47 Cal. 4th at 621-22.

California law prevents an employer from taking back wages earned and paid, and a commission chargeback is unlawful where the commission was fully earned at the time of a

11

sale. Harris v. Investor's Business Daily, Inc., 138 Cal. App. 4th 28, 40-41 (2006).  The Harris court distinguished Steinhebel on the basis that the employment agreement at issue in that case defined the commission as an "advance," and the court concluded that because a condition to the employee's right to the commission had yet to occur, that "advance" was not a wage within the meaning of § 221.  Id. (citing Steinhebel, 126 Cal. App. 4th at 705).

Here, the payment of the "one-time" bonuses cannot be considered an "advance" because payment was made only after satisfaction of the one condition precedent – that the specified amount of search fees have been collected.  While there appears to be no case that is exactly on point with the present case, the cases cited by Charlson are more applicable, because they show that once the right to compensation has vested, it has been earned and cannot be recouped.

B. Motion to Dismiss for Lack of Subject Matter Jurisdiction

    1. Legal standard

Federal courts are courts of limited jurisdiction, possessing only that power authorized by Article III of the United States Constitution and statutes enacted by Congress pursuant thereto.  See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986); see also Chen-Cheng Wang ex rel. United States v. FMC Corp., 975 F.2d 1412, 1415 (9th Cir. 1992).  The burden of establishing that a cause lies within this limited jurisdiction rests upon the party asserting jurisdiction.  Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994).  The court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction.  Id.; see also Spencer Enters., Inc. v. United States, 345 F.3d 683, 687 (9th Cir. 2003); Attorneys Trust v. Videotape Computers Prods., Inc., 93 F.3d 593, 594-95 (9th Cir. 1996).

    2. Defendant's motion

Charlson argues that, assuming the motion to dismiss the sixth cause of action is granted, the remainder of the complaint should be dismissed for lack of subject matter jurisdiction because there will no longer be $75,000 in controversy, and thus no diversity

12

jurisdiction.

In opposition DHR asserts that the remaining claims seek disgorgement of salary and benefits as an appropriate remedy, which (while not specifically alleged in the complaint) more than exceeds the jurisdictional minimum because Charlson received a monthly recoverable draw of $20,833.33 per month, plus benefits (which together exceed $100,000 for the five months at issue).

The court finds that the motion must be DENIED.  Under 28 U.S.C. § 1332, district courts have original jurisdiction over all civil actions where the matter in controversy exceeds $75,000, and is between citizens of different states.  28 U.S.C. § 1332(a)(1). Diversity jurisdiction is determined at the time of the filing of the complaint.  See Morongo Band of Mission Indians v. Calif. State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir.1988) ("Subject matter jurisdiction must exist as of the time the action is commenced."); see also Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991) ("if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events").

"A claim in excess of the requisite amount, made in good faith in the complaint, satisfies the jurisdictional requirement. . . .  Events occurring after the filing of the complaint that reduce the amount recoverable below the requisite amount do not oust the court from jurisdiction."  Budget Rent-A-Car, Inc. v. Higashiguchi, 109 F.3d 1471, 1473 (9th Cir. 1997) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289-90 (1938)); see also Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial (2014) §§ 2:1797, 2:1799.

Here, while the first through fifth causes of action do not allege a specific amount of damages, the sixth cause of action asserts that Charlson breached the employment agreement by failing to pay DHR the $211,000 it had received in bonuses.  Thus, in light of the allegations in the sixth cause of action, the jurisdictional minimum was clearly met at the time the complaint was filed, and the court retains subject matter jurisdiction regardless of whether any of the causes of action are subsequently dismissed.

13

C.     Motion to Disqualify DHR's Counsel

    1.     Legal standard

Whether to disqualify counsel is a decision committed to the discretion of the district court. See Gas-A-Tron of Ariz. v. Union Oil Co. of Calif., 534 F.2d 1322, 1325 (9th Cir. 1976).

Pursuant to Civil Local Rule 11, every attorney practicing before this court must "comply with the standards of professional conduct required of members of the State Bar of California[.]" N.D. Cal. Civ. L.R. 11-4(a)(1). Under California Rule of Professional Conduct 5-210, "[a] member shall not act as an advocate before a jury which will hear testimony from the member[,]" with certain exceptions, including where

(A) The testimony relates to an uncontested matter; or

(B) The testimony relates to the nature and value of legal services rendered in the case; or

(C) The member has the informed, written consent of the client . . .

Rule 5-210, Cal. State Bar Rules of Prof. Conduct.

In general, outright disqualification is disfavored because it may drastically affect a number of important interests – a client's right to chosen counsel, an attorney's interest in representing a client, the financial burden on a client who must replace disqualified counsel and the possibility that the disqualification motion is merely pursued for tactical reasons. Concat LP v. Unilever, PLC, 350 F.Supp. 2d 796, 814 (N.D. Cal. 2004); see also Yumul v. Smart Balance, Inc., 2010 WL 4352723, at *3 (N.D. Cal. Oct. 8, 2010).

The ethical rules are not intended to allow a lawyer to disqualify opposing counsel merely by calling him or her as a witness. See Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd., 760 F.2d 1045, 1050 (9th Cir. 1985). Consequently, disqualification motions are subject to strict judicial scrutiny. Id. Generally, only an attorney's former or current clients have a sufficient stake in litigation to have standing to move for disqualification based on conflict of interest, unless there is an ethical breach that "so infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful

14

determination of her claims." Colyer v. Smith, 50 F.Supp. 2d 966, 971 (C.D. Cal. 1999); see also S.E.C. v. King Chuen Tang, 831 F.Supp. 2d 1130, 1142 (N.D. Cal. 2011).

        2.      Defendant's motion

Charlson argues that Mr. Berdelle should be disqualified from representing DHR in this action because he and/or other attorneys from his Chicago law firm were involved in various aspects of his termination from DHR and its demand that Charlson comply with the clawback provision. Based on this, Charlson contends that Mr. Berdelle is likely to be called as a witness at trial, and should be precluded from representing DHR in the same proceeding. Charlson also asserts that Mr. Berdelle contacted him directly despite knowing he was represented by counsel, in violation of Rule 2-100 of the California Rules of Professional Conduct.

In addition, Charlson requests that the court revoke the order granting Mr. Berdelle's application to appear pro hac vice in this District because the application listed as Mr. Berdelle's local co-counsel a California attorney (Christopher White) who was not at the time admitted to the bar of ths District (and who did not in fact become a member until four days after the present motion was filed).

In opposition, DHR asserts that an attorney acting as both advocate and witness in a client's case is allowable under Rule 5-210. DHR notes that the court has discretion in deciding whether to disqualify counsel, but argues that the court must weigh competing interests of the parties against the potential adverse effects of the proceedings before it, and resolve any close case in favor of the client's right to representation by an attorney of his/her/its choice.

DHR also asserts that it was DHR and DHR alone that made the decision to terminate Charlson, without any input from Mr. Berdelle's law firm; and that once Mr. Berdelle learned that Charlson was represented in connection with the subject of the present lawsuit, he made no further attempt to contact Charlson directly. In addition, DHR argues that Rule 5-210 has no applicability to pre-trial proceedings and therefore cannot serve as a basis for disqualification.

As for the pro hac vice application, DHR contends that the statement that Mr. White was a member of this court at the time the application was filed was purely a "clerical error," and that Mr. White's admission was simply "not finalized" at that point. DHR contends that the error has since been corrected, so there is no reason to disqualify Mr. Berdelle based on this clerical error.

The court finds that both the motion to revoke Mr. Berdelle's pro hac vice status and the motion to preclude Mr. Berdelle from representing DHR must be DENIED. To the extent Charlson is seeking "reconsideration" of the pro hac vice order, he has not requested leave to file a motion for reconsideration.

To the extent he is seeking an order "revoking" Mr. Berdelle's pro hac vice status, the court finds that it is not clear from the papers that Mr. Berdelle or attorneys from his firm contacted Charlson directly despite knowing that he was represented by counsel in connection with the matters raised in this lawsuit. Moreover, Mr. Berdelle states that as soon as he discovered that Mr. Cowie was also representing Charlson in connection with this lawsuit, there was no further direct contact. In addition, while the pro hac vice application may not have been entirely straightforward, there is no evidence of any intent to defraud the court. Rather, based on the declarations submitted, it appears that it was, as DHR contends, a clerical error.

As for whether Mr. Berdelle should be disqualified from representing DHR in this action, the court finds that Charlson has not met the standard. He states that he plans on calling Mr. Berdelle as a witness regarding the termination decision, the demand for the clawback, and the alleged failure to pay wages owed. However, Mr. Berdelle has stated in his declaration that DHR made the termination decision without any assistance from counsel, and that there is no dispute regarding the demand for the clawback. Moreover, Charlson has not established that the information he seeks can only be obtained from Mr. Berdelle, as opposed to from another member of his law firm.

The filing of a declaration by a party stating that he intends to call opposing counsel as a witness at trial – as Charlson has done here – does not provide a sufficient basis for

disqualification even if that counsel has relevant testimony. First, the advocate-witness rule disqualifies the attorney only from acting as an advocate at trial. Thus, participating in pretrial activities, preparation of briefs and pleadings, and planning and trial strategy, will generally not be barred. Here, it is not at all certain that the case will go to trial.

Second, the party must show that the attorney will give evidence material to the determination of the issues being litigated, and that the evidence is unobtainable elsewhere. See U.S. Bank Nat'l Ass'n v. Friedrichs, 2013 WL 589111 at *3 (S.D. Cal. Feb. 13, 2013) (citing Nevada and Pennsylvania cases); Karlsson Group, Inc. v. Langley Farms Investments, LLC, 2009 WL 2843290 at *3 (D. Ariz. Sept. 1, 2009) (citing Arizona law); see also Colyer, 50 F.Supp. 2d at 974.

Here, Charlson has not established (a) that there will be a trial, (b) that if there is a trial, Mr. Berdelle will necessarily be called as a witness, (c) that if called as a witness at trial, Mr. Berdelle will give evidence that is unobtainable elsewhere, or (d) that there will be a conflict between any such witness testimony and Mr. Berdelle's representation of DHR. Nevertheless, the denial of the motion is WITHOUT PREJUDICE, assuming the matter does go to trial.

## CONCLUSION

In accordance with the foregoing, the motion to dismiss the sixth cause of action is GRANTED with prejudice; the motion to dismiss the complaint for lack of subject matter jurisdiction is DENIED; and the motion to disqualify DHR's counsel James Berdelle is DENIED.

**IT IS SO ORDERED.**

Dated: September 26, 2014

PHYLLIS J. HAMILTON
United States District Judge